**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JUSTIN BROOKS, SR.,** | ) | |
| | ) | **No. 15 CV 3429** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **CITY OF CHICAGO,** *et al.*, | ) | |
| | ) | **March 29, 2017** |
| **Defendants.** | ) | |

### MEMORANDUM OPINION and ORDER

Justin Brooks, Sr. brings this action against the City of Chicago, Officers Daniel Solis and Peter Spain, and Sergeant Albert Perez (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Brooks alleges that he was arrested during a traffic stop without probable cause and detained in police custody for an excessively long period and in unreasonable conditions of confinement. Before the court is Defendants' motion for summary judgment. For the following reasons, the motion is granted in part and denied in part:

### Procedural History

Brooks filed his complaint in April 2015 naming the City of Chicago, Officers Daniel Solis, Jeffrey Coleman, and Peter Spain, and Sergeant Albert Perez as defendants. (R. 1, Compl.) After the parties consented to this court's jurisdiction, (R. 24); *see* 28 U.S.C. § 636(c), the court dismissed Officer Coleman from this action because there were no claims made against him, (R. 39). The parties then proceeded with discovery on the claims against Defendants.

Defendants filed the current motion for summary judgment on December 23, 2016. (R. 66.) The court ordered Brooks to file a response by January 30, 2017. (R. 65.) On January 30, 2017, Brooks filed a motion requesting an extension of time to respond, which the court granted with a new deadline of February 20, 2017.[1] (R. 69; R. 71.) The court cautioned Brooks that if he ignored the deadline, the court would "rule on the pending motion for summary judgment without the benefit of Plaintiff's opposition." (R. 71.) Brooks did not file a response opposing the motion.

## Local Rule 56.1

Local Rule ("L.R.") 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." The statement should consist of short, numbered paragraphs that are supported by citations to admissible evidence. L.R. 56.1(a)(3); *see also Smith v. Lamz*, 321 F.3d 680, 682 (7th Cir. 2003). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting L.R. 56.1(b)(3)(B)). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

---

[1] In light of February 20, 2017, being a court holiday, the court waited until the next day for Brooks to file his response.

L.R. 56.1(b)(3)(C). Here, Defendants' L.R. 56.1 undisputed material facts are deemed admitted because Brooks did not oppose the current motion.

## Facts

The undisputed facts show that this lawsuit stems from an April 18, 2013 incident in Chicago, Illinois, when Brooks was pulled over for multiple driving infractions. (Defs.' Statement of Facts ("DSOF") at ¶¶ 3, 6.) On that date at approximately 5:44 p.m., Officers Solis and Spain were patrolling in a marked patrol car when they observed Brooks driving with an inoperable taillight while talking on a mobile phone. (Id. at ¶¶ 7-9.) The officers then stopped Brooks's car near the intersection of Perry Street and 69th Street. (Id. at ¶ 12.) As they approached Brooks's car, the officers observed Brooks's son in the back seat. (Id. at ¶ 14.) The officers asked Brooks to roll down his window. (Id. at ¶ 15.) Brooks did not comply and refused to exit his vehicle until a sergeant arrived on the scene. (Id. at ¶¶ 16-17.) When Sergeant Perez arrived on the scene about 10 minutes later, he identified himself as a sergeant and asked Brooks to exit his car. (Id. at ¶¶ 20, 22.) Brooks complied with the sergeant's request. (Id. at ¶¶ 24-25.) Upon exiting, Brooks was immediately handcuffed and then transported to the Seventh District police station. (Id. at ¶ 26.) At the police station, one of the officers started on the requisite paperwork and Brooks was taken to a small room where he spent eight hours[2] handcuffed to a bench. (Id. at ¶¶ 28-30.) He never complained to the officers

---

[2] Defendants take the position that Brooks was handcuffed to a bench for eight hours "only for the purpose of this motion for summary judgment." (R. 67, Defs.' Br. at 4.)

about the handcuffs and never sought medical treatment for any injury. (Id. at ¶¶ 33, 35.) Eventually, Brooks was taken to lockup to be processed. (Id. at ¶ 36.) The next morning, Brooks appeared before a judge and later that day was released on a recognizance bond. (Id. at ¶¶ 37-38.)

Brooks was charged with driving while using a mobile phone, driving a vehicle with an inoperable taillight, failing to properly restrain a child, endangering the life of a child, driving under the influence of drugs, and obstructing an officer. (Id. at 42, 44.) He contested his criminal charges and a bench trial was held on those charges. At the close of the state's case, the trial judge granted Brooks's motion for a directed finding, dismissing all charges except for the two that caused Officers Solis and Spain to make the traffic stop—driving while using a mobile phone and driving a car with an inoperable taillight. (Id. at ¶¶ 43-44; see also id., Ex. D at 49-50.) Brooks was convicted of those two charges. (Id. at ¶ 43.)

**Analysis**

Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Summary judgment should be entered "against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In general, a Section 1983 plaintiff must show that a person "acting under color of state law deprived [him] of a right, privilege, or immunity secured by either the Constitution or federal law." *Shelton v. Wright*, No. 09 CV 6413, 2013 WL 212910, at \*6 (N.D. Ill. Jan. 18, 2013) (citing *Lugar v. Edmondsun Oil Co.*, 457 U.S. 922, 929 (1982)).

## A.    False Arrest Claims Against Officers Solis and Spain

Brooks alleges that Officers Spain and Solis falsely arrested him because, according to him, they lacked probable cause. (See R. 1, Compl. at ¶ 18.) To prevail on a false arrest claim, a Section 1983 plaintiff must show that an officer made an "unreasonable seizure prohibited by the Fourth Amendment." *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005). Probable cause to arrest is an absolute bar to a Section 1983 claim for false arrest. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016); *Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Also, "[w]here 'the arresting officer witnessed the crime and the conviction [was] based on his testimony, proof of the crime is *ipso facto* proof of probable cause.'" *Puch v. Vill. of Glenwood*, No. 05 CV 1114, 2012 WL 2502688, at \*4 (N.D. Ill. June 27, 2012) (quoting *Patterson v. Leyden*, 947 F. Supp. 1211, 1217 (N.D. Ill. 1996)); s*ee also King v. Goldsmith*, 897 F.2d 885, 886-87 (7th Cir. 1990) (explaining that probable cause is indisputable when an arrest results in conviction). A false arrest claim, which would undermine

the validity of a criminal conviction, may accrue only if the conviction is later reversed. *Ienco*, 429 F.3d at 684 (citation omitted).

Here, Brooks's false arrest claim cannot stand because his convictions for driving while using a mobile phone and driving a car with a broken taillight have not been overturned. A patrolling police officer has probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Shelton*, 2013 WL 212910, at \*6 (citing *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998)). The Supreme Court has instructed that a plaintiff convicted of a crime cannot maintain a Section 1983 claim where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A standing conviction leads to what is commonly referred to as a *Heck* bar in a Section 1983 false arrest lawsuit.

Because Brooks's convictions stemming from the arrest remain in place, he may proceed on his false arrest claim only so far as the facts underlying the false arrest claim do not contradict the state court convictions at his criminal trial. *See Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016). For purposes of the *Heck* bar, it does not matter that the most severe criminal charges were dismissed by the criminal court. Brooks may not contend that Officers Spain and Solis lacked probable cause for the traffic stop because he was convicted of two

traffic violations. Nor is it relevant that Brooks was initially stopped for only low-level ticketable offenses because the Supreme Court, in *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001), set a low threshold for probable cause and custodial arrest. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id.*; *see also Shelton*, 2013 WL 212910, at \*6 (citing *Atwater*). The *Atwater* Court concluded that an officer was authorized—though not required—to make a custodial arrest when the driver of a vehicle and her children were not wearing seatbelts. *Atwater,* 532 U.S. at 354. The *Atwater* Court described the arrest as "gratuitous humiliation imposed by a police officer who was (at best) exercising extremely poor judgment." *Id.* at 346-47. The arrest was a "pointless indignity," but nevertheless did not violate the Fourth Amendment's guarantee to be free from unreasonable searches and seizures. *Id.* at 323, 347, 360. Consistent with *Atwater*, in Illinois, an officer may arrest an individual for violating the Illinois Vehicle Code or a municipal ordinance that provides only for a fine as punishment. *See Wells v. City of Chicago*, 896 F. Supp. 2d 725, 735 (N.D. Ill. 2012); *Platek v. Vill. of Lisle*, No. 92 CV 7479, 1995 WL 583681, at \*3 (N.D. Ill. Oct. 2, 1995) (recognizing lawful arrest for improper lighting on a vehicle).

Though he was acquitted of several charges, it is undisputed that Brooks was convicted of driving while using a mobile phone and driving with an inoperable taillight. (DSOF at ¶¶ 42-44.) He does not contend that either conviction was later

reversed. Officers Solis and Spain personally observed the use of the mobile phone and the inoperable taillight before they stopped Brooks. (Id. at ¶¶ 7-9.) Brooks even admitted during discovery in this case that the taillight was inoperable. (Id. at ¶ 4.) As such, Defendants' motion for summary judgment on Brooks's false arrest claim against Officers Solis and Spain is granted.

**B.     False Arrest Claim Against Sergeant Perez**

The false arrest claim against Sergeant Perez is the same as the false arrest claims against Officers Solis and Spain. Brooks alleges that when he exited the car, Officers Solis and Spain and Sergeant Perez arrested him without probable cause. (R. 1, Compl. at ¶¶ 17-18.) The claim against Sergeant Perez is subject to summary judgment on two grounds: first, for the reasons already discussed as to the false arrest claims against Officers Solis and Spain, and second, because qualified immunity attaches to Sergeant Perez.

Qualified immunity attaches when an officer's actions "do[] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation omitted); *see also Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"). *White* explains that an officer who arrives at the scene later than other officers may assume that proper procedures were followed—regardless of what actually happened. *White*, 137 S. Ct. at 551-52 (explaining that qualified immunity attaches to the late-arriving officer). The protection afforded by qualified immunity also

"tolerates reasonable mistakes regarding probable cause." *Leaver v. Shortess*, 844 F.3d 665, 670 (7th Cir. 2016) (citation omitted). Qualified immunity attaches to Sergeant Perez here because he was lawfully permitted to assume that Officers Solis and Spain had followed proper procedures and had probable cause when they stopped Brooks for violating traffic laws. *See White*, 137 S. Ct. at 552. Even if it could be shown that Officers Solis and Spain lacked probable cause to make the traffic stop and arrest, Sergeant Perez would still be permitted to assume that the officers had followed proper procedures. *See id.* Accordingly, Defendants' motion for summary judgment on Brooks's false arrest claim against Sergeant Perez is granted.

## C.    Post-Arrest Detention

Brooks also alleges that both the length of his detention and the conditions in which he was held were constitutionally impermissible. Specifically, he alleges that the duration of his custody was unnecessarily lengthy and that he was handcuffed to a bench overnight. (R. 1, Compl. at ¶¶ 20, 23.) Defendants counter that the charges filed against Brooks were sufficiently serious to permit them to hold Brooks for up to 48 hours. (R. 67, Defs.' Br. at 10.) They argue that a detention of up to 48 hours is presumptively reasonable because Brooks was "arrested for two Class A misdemeanors, each punishable by up to a year in jail." (Id. at 9-10 (citing *Portis v. City of Chicago*, 613 F.3d 702, 704 (7th Cir. 2010) (analyzing Fourth Amendment claim)).) According to Defendants, the burden is on Brooks to establish that his release was needlessly or maliciously delayed. (Id. at 10.) Defendants further

argue that Brooks cannot bring a claim alleging a constitutional violation because he failed to adequately complain about being handcuffed to a bench and because he slept during that time. (Id. at 11.)

Brooks's claims must be analyzed under the Fourth Amendment's objectively unreasonable standard because, based on the chronology, the claims arose before a judicial finding on whether there was probable cause to hold Brooks. *See Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007); *see also Manuel v. City of Joliet*, 580 U.S. ___, slip op. at 1, 7 (March 21, 2017) (explaining that the Fourth Amendment protects arrestees throughout their pretrial detention, even after a finding of probable cause). The documentation supporting Defendants' statement of facts does not show exactly how long Brooks was held, but it confirms that the detention lasted less than 48 hours. As a whole, the cited portions of the record suggest, even when viewed in Brooks's favor, that he was in custody for approximately 18 hours. Defendants agree with Brooks's allegation for purposes of this motion that before taking him to lockup, the officers held him in a "small room handcuffed to [a] bench for eight hours." (DSOF at ¶ 30.) While Brooks "was in the holding room, Officers Solis and Spain completed the paperwork for his arrest and [Brooks] slept on the bench." (R. 67, Defs.' Br. at 4.)

Although the undisputed facts show that Officers Solis and Spain had probable cause to arrest Brooks, arresting officers are not given free rein to subsequently punish an arrestee. In particular, courts have set limits on the length and conditions of detention. For example, an officer may hold an arrestee "for a

brief period of detention to take the administrative steps incident to arrest," but if further detained the arrestee must promptly receive a hearing on probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975). "At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest." *Id.* at 114 (citing 2 M. Hale, Pleas of the Crown 77, 81, 95, 121 (1736); 2 W. Hawkins, Pleas of the Crown 116-17 (4th ed. 1762)). A 48-hour holding period (or less) is presumed to comply with *Gerstein*'s promptness requirement, though 48 hours may be excessive if the arrestee proves that a judicial ruling was unreasonably delayed. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *Matz v. Klotka*, 769 F.3d 517, 527 (7th Cir. 2014). "[T]he length of time taken to complete administrative steps must be reasonable." *Chortek v. City of Milwaukee*, 356 F.3d 740, 746-47 (7th Cir. 2004). Examples of unreasonable delay include delay induced by ill will toward the arrestee or delay for the sake of delay. *Cnty. of Riverside*, 500 U.S. at 56.

Regardless of the number of hours a suspect is held, a court must consider all of the circumstances "of a particular detention rather than fixate on the numerical length of detention." *Bass v. Hansen,* No. 09 CV 1087, 2011 WL 528837, at \*4 (N.D. Ill. Feb. 3, 2011). Under certain circumstances, as little as 11 hours of detention can present a jury question. *Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir. 1988). And in some instances a delay of as little as four hours must be explained. *See Portis*, 613 F.3d at 705; *see also Chortek*, 356 F.3d at 747-48 (noting that "if the police choose to perform time-consuming tasks after an arrest, perhaps they must do so on

their own time rather than the suspect's, issuing a citation rather than keeping the suspect locked up in the interim"); *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1350-51 (7th Cir. 1985) (noting absence of any evidence justifying length of detention when suspects were arrested for a minor misdemeanor). But the plaintiff has the burden of proof if he contends that the detention was excessive. *Portis*, 613 F.3d at 705 (explaining that "the court must examine not only the length of a given detention but also the reasons why release was deferred").

Perhaps Brooks could have argued the length of his detention was excessive, but this court is not willing to make the argument on his behalf without some supporting evidence to counter Defendants' position because Defendants submitted an undisputed explanation of the chronology of events. There is no evidence that administrative steps associated with Brooks's arrest were unreasonably delayed. *See Gerstein*, 420 U.S. at 113-14; *Cnty. of Riverside*, 500 U.S. at 56. Nor is there any contention that Officers Solis and Spain maintained any post-arrest ill-will toward Brooks and delayed his hearing for the sake of delay. *See Cnty. of Riverside*, 500 U.S. at 56. In the absence of any evidence that Officers Solis and Spain played a role in an improper delay, Brooks has not met his burden to show his detention was excessively long and Defendants' explanation is sufficient regarding the length of Brooks's detention. *See Chortek*, 356 F.3d 740, 747-48 (7th Cir. 2004).

However, the length of detention is not the only issue at play here because, for purposes of this motion, Defendants admit that Brooks was handcuffed to a bench for at least eight hours. Brooks asserts that his constitutional rights were

violated when he was unduly held and handcuffed to a bench overnight. (R. 1, Compl. ¶¶ 20, 23.) Defendants counter that the conditions of "Brooks's confinement, as alleged, were not bad enough to raise constitutional concerns." (R. 67, Defs.' Br. at 6.) Even if the conditions in which Brooks was held did violate his rights, Defendants argue, Officers Solis and Spain are entitled to qualified immunity. Defendants further argue that Brooks has not adequately met his burden to rebut Defendants' qualified immunity defense. Although Brooks bears the burden of proving that qualified immunity does not attach to Defendants, *Findlay v. Lenderman*, 722 F.3d 895, 899 (7th Cir. 2013), this court also recognizes that "[t]he ultimate burden of persuasion remains with [the movant] to show that [the movant] is entitled to judgment as a matter of law," *Akindele v. Arce*, No. 15 CV 5952, 2017 WL 467683, at *2 (N.D. Ill. Feb. 3, 2017); *see also Manley v. Boat/U.S.*, No. 13 CV 5551, 2017 WL 24712 (N.D. Ill. Jan. 3, 2017) (denying motion for summary judgment on multiple claims despite plaintiff's failure to file a response brief). Here, the undisputed facts offered by Defendants do not address why it was necessary or reasonable to have kept Brooks handcuffed to a bench in a holding room for eight hours while the officers completed paperwork. (DSOF at ¶¶ 28-31, 36.)

As outlined above, Brooks's claim must be analyzed under the Fourth Amendment standard and, therefore, the issue here is whether handcuffing Brooks to a bench for eight hours was objectively reasonable. *See Williams*, 509 F.3d at 403. The court reviewed and considered a number of Fourth Amendment cases

involving prolonged handcuffing and, though none of the claims involved handcuffing an arrestee to a stationary object for as long as eight hours, the available cases shed light on what may and may not be objectively reasonable. In the absence of any other variable, courts generally begin to question the reasonableness of a prolonged handcuffing after a detainee has been held in handcuffs for more than a few hours. *See, e.g.*, *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (describing being held in handcuffs for 25 to 30 minutes as "mild allegations"); *Payne v. Pauley*, 337 F.3d 767, 781 (7th Cir. 2003) (explaining that 30 minutes in handcuffs might have been excessive if they were too tight); *Rabin v. Flynn*, 725 F.3d 628, 630 (7th Cir. 2013) (handcuffing for one and one-half hours was perhaps unreasonable but, under the circumstances, qualified immunity applied); *Muehler v. Mena*, 544 U.S. 93, 95, 100 (2005) (holding that a two- or three-hour detainment in handcuffs was reasonable because of the government's safety interest); *Swanigan v. Trotter*, 645 F. Supp. 2d 656, 666-69, 680 (N.D. Ill. 2009) (handcuffing for three and one-half hours was reasonable); *Heitschmidt v. City of Houston*, 161 F.3d 834, 837 (5th Cir. 1998) (finding officer's conduct objectively unreasonable when detainee was handcuffed and in pain for more than four hours); *McNeill v. Jordan*, No. 14 CV 2872, 2017 U.S. Dist. LEXIS 23485, at *44 (E.D.N.Y. Feb. 17, 2017) (denying defendants' motion for summary judgment because a reasonable jury might find that more than five hours in handcuffs was excessive under the circumstances). Based on these cases and others and viewing the facts in the light most favorable to Brooks, this court finds that Defendants failed to

demonstrate that they are entitled to summary judgment with respect to his claim that being handcuffed to a bench for eight hours violated his constitutional rights. If true, the jury may find that the act of Officers Solis and Spain was not objectively reasonable.

The court next considers Defendants' argument that they are shielded by qualified immunity as a matter of law, (see R. 17 at 7; R. 67 at 11-14), because perhaps "their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotation marks omitted). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official is protected by qualified immunity unless the very action in question has previously been held unlawful" in an identical situation. *Id.*; *see also supra* Section B (discussing qualified immunity standard). An official can be on notice "even in novel factual circumstances." *Hope*, 536 U.S. at 741. The *Hope* Court listed various forms of punishment that officials should know run afoul of the Constitution and "offend contemporary concepts of decency, human dignity, and precepts of civilization which we profess to possess." *Id.* at 742 (citation omitted). On point here, it is inappropriate to punish an inmate by handcuffing him to a fence or jail cell for extended periods of time. *Id.* (explaining there is no distinction between prolonged handcuffing to a fence and prolonged handcuffing to a hitching post). The *Hope* Court cautioned against requiring

excessive factual similarity when assessing whether qualified immunity attaches. *Id.* at 743.

Viewing the undisputed facts in the light most favorable to Brooks, the court cannot find as a matter of law that qualified immunity attaches to Officers Solis and Spain. There are a number of relevant factual similarities between Brooks's conditions of confinement and the facts in *Hope*.[3] For example, both Brooks and Hope failed to promptly exit the vehicles they were riding in and initially resisted orders from law enforcement. (See DSOF at ¶¶ 17, 24); *Hope*, 536 U.S. at 734 (noting Mr. Hope failed to promptly follow orders to exit a prison bus and subsequently got into an altercation with a guard). Next, after being subdued, both spent seven or more hours in handcuffs, and both were handcuffed to a stationary object. (See DSOF at ¶ 30); *Hope*, 536 U.S. at 735. Last, the extended handcuffing was unnecessary in light of the absence of an ongoing emergency or safety issue. (See DSOF at ¶¶ 1-49 (failing to describe an ongoing emergency or safety reason to justify the extended handcuffing)); *Hope*, 536 U.S. at 738. The *Hope* Court emphasized that handcuffing a prisoner to a stationary object for seven hours was itself sufficient to violate the Constitution. *See Hope*, 536 U.S. at 747; *see also Anderson-Bey v. Dist. of Columbia*, 466 F. Supp. 2d 51, 63 (D.D.C. 2006) (explaining

---

[3] The court notes that Defendants are not helped by the fact that the Hope Court was applying the Eighth Amendment standard because that standard requires more from a Section 1983 plaintiff than the Fourth Amendment standard applicable here, which only requires the plaintiff to prove that an "officer's conduct was objectively unreasonable under the circumstances." *Williams*, 509 F.3d at 403; *see also Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004) (explaining that the Eighth Amendment analysis conducted by the *Hope* Court involved two steps, an objective analysis and a separate subjective analysis).

that the *Hope* Court recognized that handcuffing a prisoner to a hitching post for seven hours was a stand-alone claim and that other factors such as the denial of food, water, and toilets only exacerbated the inmate's pain and discomfort). Such treatment was and logically remains prohibited by Supreme Court precedent. *Hope*, 536 U.S. 747-48. As such, under the facts offered by Defendants, Officers Solis and Spain are not entitled to qualified immunity as a matter of law.

That is not to say that eight hours in handcuffs always creates a claim for a violation of constitutional rights. It depends on the circumstances. In fact, courts in this district have allowed prolonged handcuffing in excess of eight hours when necessary to maintain security and safety, for example, in a detention facility undergoing a large-scale search of holding cells. *See, e.g., Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 677 (N.D. Ill. 2009) (distinguishing *Hope* primarily on the presence of a safety concern).

Here, however, this court does not have sufficient factual information to determine whether Officers Solis and Spain had a legitimate reason to hold Brooks handcuffed to a bench for eight hours. Although the undisputed facts also show that Brooks did not complain to the officers about being handcuffed, he was able to sleep for at least part of the night while handcuffed, and he never sought medical treatment after his release, (id. at ¶ 31, 33, 35), they alone do not establish that Officers Solis and Spain acted in an objectively reasonable manner as a matter of law.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**