# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN BROOKS, SR., | ) | |
| | ) | No. 15 CV 3429 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| DANIEL SOLIS, *et al.*, | ) | |
| | ) | July 7, 2017 |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

Justin Brooks, Sr. brings this action against the City of Chicago and Officers Daniel Solis and Peter Spain (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, claiming that Officers Solis and Spain violated his constitutional rights by detaining him in police custody for an excessively long period and in unreasonable conditions of confinement. Before the court are Brooks's motions *in limine* Nos. 1-10 and Defendants' motions *in limine* Nos. 1-18. Brooks' Motion Nos. 2, 3, and 6 and Defendants' Motion Nos. 1, 3, 7-11, and 13-16 are not opposed. For the following reasons, Brooks's Motion Nos. 1-4, 6-8, and 10 are granted, Brooks's Motion Nos. 5 and 9 are denied, Defendants' Motion Nos. 1-3 and 5-18 are granted, and Defendants' Motion No. 4 is denied:

## Legal Standard

Although not expressly authorized by the Federal Rules of Evidence, the authority to make rulings on motions *in limine* springs from the court's inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984);

*Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Motions *in limine* are used to "exclude evidence before trial in order to prevent the trial from being interrupted by wrangles over admissibility or the jury from getting a whiff of prejudicial evidence that may in fact be inadmissible." *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1463 (7th Cir. 1996). But because the primary aim of *in limine* motions is to exclude evidence that is inadmissible on any ground, some rulings are best left until trial so that the context, foundation, and relevance of the contested evidence can be better understood. *Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001) (noting that evidence should be excluded, *in limine*, only to the extent that clearly inadmissible evidence is eliminated). As such, neither a ruling granting a motion *in limine*, nor a ruling denying one, needs to be the final word on the matter. The court is free to revisit the following rulings during trial. *Luce*, 469 U.S. at 41-42.

## Analysis

**A.     Brooks's Motions *in Limine***

Brooks filed 10 motions *in limine* on June 19, 2017. (R. 82, Pl.'s Mot. No. 1; R. 84-93, Pl.'s Mot. Nos. 2-10.) Defendants oppose the following seven motions: Motion Nos. 1, 4, 5, 7-10. (R. 94, Defs.' Resp.)

**1.     Motion Nos. 1, 8 & 10.**

Brooks seeks to prevent Defendants from referencing his prior arrests, convictions, and criminal history. (R. 84; R. 91; R. 93.)

**(a) Prior Arrests**

Brooks asserts that his prior arrests that did not lead to an admissible conviction should be barred from trial. (Pl.'s Mot. No. 1 at 1-2, 4-5; Pl.'s Mot. No. 8 at 1-3; Pl.'s Mot. No. 10 at 1-4.) Defendants argue in response that because they expect Brooks to testify about alleged emotional damages resulting from the conditions of his confinement (i.e., being allegedly handcuffed to a wall for an extended period), his previous arrests and convictions, including at least one prison term, are fair game to rebut his testimony about emotional trauma from his detention. (R. 94, Defs.' Resp. at 2.)

Brooks is correct that prior arrests not leading to convictions are viewed as inadmissible character evidence. *See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1024 (N.D. Ill. 2001) (prior arrests inadmissible under Rules 402 and 404(b)). Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, other decisions in this district are supportive of Defendants' position that prior arrests may be admitted to rebut testimony about the emotional trauma of an arrest. *Goodman v. Babicz*, No. 09 CV 5954, 2013 WL 146377, at *8 (N.D. Ill. Jan. 14, 2013) (finding the fact that a plaintiff had been arrested and jailed two dozen times "was probative of the extent of his emotional distress"); *Gribben v. City of Summit*, No. 08 CV 123, 2010 WL 2928094, at *3 (N.D. Ill. July 20, 2010) ("If presented with evidence that [the plaintiff] had been arrested and incarcerated

numerous times in the past, the jury could conclude that [the plaintiff] would not have been as emotionally traumatized by the arrest . . . as he claims to have been.").

There is also an argument to be made that prior arrests could *sensitize*, rather than *desensitize*, a person to the trauma of being placed and held in custody. *Betts*, 784 F. Supp. 2d at 1025; *see also Cianfaglione v. Rogers*, No. 10 CV 2170, 2012 WL 1982536, at *6 (C.D. Ill. June 4, 2012) (concluding that defendants had not adequately shown that the plaintiff's prior arrest record was significant enough to be used to undercut her claim for emotional damages). Some courts have reasoned that the admissibility of prior arrests—even if intended to show significant contact between the plaintiff and police in order to undercut a claim of emotional damages—depends on how analogous those previous arrests were in comparison to the arrest in question. *See, e.g., Moore v. City of Chicago*, No. 02 CV 5130, 2008 WL 4549137, at *1 (N.D. Ill. April 15, 2008); *Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 855 (N.D. Ill. 2001). In *Moore* the court found that "to be relevant, the arrests must be substantially similar and the court must conduct a prejudice analysis." *Moore*, 2008 WL 4549137, at *1. Likewise, in *Brandon* the court refused to allow evidence of prior arrests because "[t]here is no indication that [plaintiff's] previous arrests involved similar facts, so their probative value is quite low." *Brandon*, 179 F. Supp. 2d at 855.

Neither party has presented the court with a comprehensive list of Brooks's prior arrests, let alone facts that might allow the court to differentiate between the prior arrests and neither party has cited any evidence that Brooks's previous

4

brushes with the law have conditioned him to readily accept any physical or psychological impact associated with being held in custody or that prior arrests have sensitized him to being taken into custody. Absent such information, the court is unable to engage in any meaningful analysis to either admit or exclude evidence of Brooks's prior arrests prior to Brooks's trial testimony.

Defendants also contend if Brooks raises his character for truthfulness, then he will have opened the door and they should be permitted to raise the issue of his arrest history. (R. 94, Defs.' Resp. at 2.) To be sure, there are myriad ways that Brooks could open the door to his prior arrests. However, the risk of unfair prejudice to Brooks is considerable if prior arrest evidence is admitted without the door being opened first. For these reasons, Brooks's Motion Nos. 1, 8, and 10 are granted with respect to evidence of prior arrests. Defendants are free to move the court to reconsider this ruling after Brooks's direct examination testimony.

**(b)    Prior Convictions and Criminal History**

Brooks seeks to bar Defendants from referencing his prior convictions, including a potentially admissible 2007 felony conviction for grand theft from California. (R. 84, Pl.'s Mot. No. 1 at 2.) Brooks contends that his felony conviction from more than 10 years ago "provides no probative value whatsoever to his character for truthfulness." (Id. at 3.) Defendants concede that Brooks's felony conviction falls outside of the scope of Federal Rule of Evidence 609, but contend that because Brooks brings a claim for unreasonable conditions of his confinement, his felony conviction becomes relevant as he is familiar with arrest procedures and

5

is accustom to various conditions of confinement. (R. 94, Defs.' Resp. at 3.) They also argue that Rule 403 precludes such evidence only upon "a showing of *unfair* prejudice *substantially* outweighing probative value." (Id. (citing *Jones v. Sheahan*, No. 99 CV 3669, 2003 WL 21654279, at *5 (N.D. Ill. July 14, 2003) (citing *Young v. Rabideau*, 821 F.2d 373, 377 (7th Cir. 1987) (emphasis in original))).) According to Defendants, a discussion of Brooks's prior felony conviction would be neither substantial nor unfair. (Id.) However, Defendants do not present any facts suggesting that Brooks has been previously chained to walls overnight while in custody or that his previous conditions of confinement were in any way similar to the facts alleged in this case. There is no evidence presented regarding Brooks's incarceration in California for which the court could consider to be analogous to the conditions alleged here. And even if evidence would show that Brooks had been previously chained to walls for extended periods, it is difficult to reach a conclusion that one becomes accustomed or desensitized to such treatment. For these reasons, Brooks's Motion Nos. 1, 8, and 10 are granted with respect to his prior convictions and criminal history. Defendants are free to move the court to reconsider this ruling after Brooks's direct examination testimony.

### 2. Motion No. 4.

Brooks seeks to prevent Defendants from referencing the circumstances under which his attorneys were retained, (R. 87, Pl.'s Mot. No. 4), presumably to prevent Defendants from signaling to the jury that he was charged with a crime in connection with his detention. He argues that this information should be excluded

6

under Federal Rule of Evidence 402. (R. 87, Pl.'s Mot. No. 4 at 1.) Defendants do not oppose this motion unless Brooks "presents argument regarding any alleged missing evidence or not understanding or knowing that he should have reported the allegations he makes in this civil lawsuit to his attorneys, the City of Chicago or any agency or department of the City of Chicago." (R. 94, Defs.' Resp. at 4.) As such, Motion No. 4 is granted, but Defendants are free to move the court to reconsider this ruling after Brooks's direct examination testimony.

3. **Motion No. 5.**

Brooks seeks to prevent Defendants from offering evidence that Defendants will endure financial hardship if Brooks is awarded damages. (R. 88, Pl.'s Mot. No. 5 at 1.) He contends that Officers Solis and Spain should be barred from making any mention of financial hardship "other than specifically as it relates to the claim for punitive damages." (Id.) Defendants counter that they should not be "barred from putting on the financial condition defense." (R. 94, Defs.' Resp. at 4.) Defendants further argue that Brooks should be precluded from introducing evidence that the city is obligated to cover any compensatory damages awarded by the jury. (Id. at 5.)

The probative link between the city's indemnification obligations and whether Officers Solis and Spain acted wrongfully is too tenuous to be relevant and would be similar to signaling to the jury that their liability is covered by insurance. *See generally* Fed. R. Evid. 411 (explaining that whether a defendant was insured is not admissible to prove that the defendant acted wrongfully). Although Rule 411

7

does not expressly prohibit the admission of indemnification evidence in cases such as this one, courts in this circuit have found that such evidence runs afoul of this rule. *See, e.g., Figueroa v. City of Chicago*, No. 97 CV 8861, 2000 WL 520926, at *1 (N.D. Ill. Apr. 24, 2000). Even if evidence of indemnification does not offend Rule 411, such evidence may still be more prejudicial than probative. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003) (excluding indemnification evidence of the City of Chicago based upon a Rule 403 balancing test). For these reasons, Brooks's Motion No. 5 is denied and Brooks is precluded from referencing the city's indemnification obligations. However, if Defendants' trial strategy includes a financial condition defense, Brooks will be permitted to introduce evidence of the city's indemnification obligations for any compensatory damages awarded by the jury.

4. **Motion No. 7.**

Brooks seeks to prevent Defendants from referencing police officers as heroes or arguing about what police officers generally do or do not do. (R. 90, Pl.'s Mot. No. 7 at 1.) Brooks anticipates that Defendants might make any one of a series of generalized arguments about police officers to the jury: (1) they do not strike people without reason; (2) they do not use excessive force without reason; (3) they are heroes; (4) they risk their lives on a daily basis; (5) they serve and protect the community; (6) they face danger every day; and (7) they would not risk their career by treating people as Brooks alleges. (Id. at 1-2.) Defendants agree to the extent that they should stay away from arguments about what police officers generally do

8

or do not do, but contend that they should be able to argue what Officers Solis and Spain do or do not do at trial. (R. 94, Defs.' Resp. at 5.) Accordingly, Brooks's Motion No. 7 is granted, but Defendants are not barred from offering evidence about what Officers Solis and Spain did or did not do in connection with Brooks's detention.

   5.   **Motion No. 9.**

Brooks seeks to prevent Defendants from arguing for an adverse inference against him because he failed to produce some witnesses or because he failed to introduce certain exhibits related to his arrest and detention. (R. 92, Pl.'s Mot. No. 9 at 1.) More specifically, Brooks suggests that although he intends to call several fact witnesses at trial, Defendants might criticize a lack of testimony from Letrecia Williams. (Id. at 2) Brooks contends that Defendants should not be permitted to argue for an adverse inference before they "establish that the missing witness was peculiarly in the power of [Brooks] to produce." (Id. (citing *Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993); *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1353 (7th Cir. 1983)).) In response, Defendants state that they "do not understand the necessity or rationale for this motion and [Brooks] was not available to clarify" before the response deadline. (R. 94, Defs.' Resp. at 5.) Motion No. 9 is denied as moot as the parties have already agreed that, "[t]he law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial [or] require any party to

present as exhibits all papers and things mentioned during this trial." (R. 80, Agreed Jury Instructions at 22.)

B.  **Defendants' Motions *in Limine***

Defendants filed 18 motions *in limine* on June 19, 2017. (R. 82, Defs.' Mot.) Brooks opposes the following seven motions: Nos. 2, 4-6, 12, 17, and 18. (R. 98, Pl.'s Resp.)

   1.   **Motion No. 2.**

Defendants seek to prevent Brooks from making reference to Sergeant Perez as a defendant because he was dismissed at the summary judgment stage. (R. 82, Defs.' Mot. No. 2.) Furthermore, Defendants seek to remove Sergeant Perez from the case caption. Brooks contends that there are still claims pending against Sergeant Perez, but he fails to identify what those claims are. (R. 98, Pl.'s Resp. at 1.) Because Brooks never filed a response to Defendants' motion for summary judgment the court had no reason to consider or analyze whether there may be other claims against Sergeant Perez aside from the false arrest claim, which the court dismissed on two separate grounds. (R. 74 at 9; see also R. 73 ("Defendant Sergeant Albert Perez is no longer a defendant in this action.").) For these reasons, Defendants' Motion No. 2 is granted. There is no basis to refer to Sergeant Perez as a defendant in this case.

   2.   **Motion No. 4.**

Defendants move to exclude testimony, evidence, argument, or innuendo that any non-party police officer or city personnel, other than Officers Solis and Spain,

were responsible for any of Brooks's alleged injuries because Officers Solis and Spain should not be held liable for the actions of another person. (R. 82, Defs.' Mot. No. 4 at 6.) The court is unaware of any allegations that any non-party individuals were responsible for injuring Brooks. And Defendants have not identified any potential non-party that would be identified at trial, nor have Defendants cited to any deposition testimony or other discovery that would suggest Brooks or one of his witnesses will single out any non-party as responsible for injuring Brooks.

Brooks contends that this motion is premature and overbroad and notes that plaintiffs "are routinely permitted to describe their recollections of events from the moment of their arrest to the termination of any legal proceedings resulting from the arrest, as well as any additional consequences to them that plausibly can be attributed to" a defendant's conduct. (R. 98, Pl.'s Resp. at 2 (quoting *Ratliff v. City of Chicago*, No. 10 CV 739, 2012 WL 5845551, at *3 (N.D. Ill. Nov. 19, 2012).) *Ratliff* further clarifies though that a plaintiff "may not insinuate that any non-[d]efendant officers committed misconduct, since there are no claims against any such officers . . . ." *Ratliff*, 2012 WL 5845551, at *3. The court agrees with Brooks that the relief Defendants seek is too broad. For this reason, Motion No. 4 is denied and the court will rule in a manner consistent with *Ratliff* if the issue arises during trial.

    **3.**    **Motion No. 5.**

Defendants seek to prevent Brooks from eliciting evidence or arguing that the City of Chicago "improperly trains, disciplines, monitors or controls police officers."

11

(R. 82, Defs.' Mot. No. 5 at 6.) Defendants argue that information related to how the city trains, disciplines, monitors, and controls police officers is not relevant to the issues in this case and would be both highly prejudicial and confusing to the jury. (R. 82, Defs.' Mot. No. 5 at 6-7 (citing Fed. R. Evid. 401, 403; 745 ILCS 10/2-109).) Brooks counters that whether Officers Solis and Spain acted (or not) in accordance with their training is relevant to whether they acted reasonably. (R. 98, Pl.'s Resp. at 3 (citing *Brandon*, 179 F. Supp. 2d at 853.)

In the complaint, Brooks "fail[ed] to include adequate factual allegations identifying the municipal policy at issue and how the implementation of such policy deprived [Brooks] of his constitutional rights." (R. 39, Order dated Dec. 23, 2015.) As a result, Brooks's *Monell* claim against the city was dismissed. (Id.) To the extent that Brooks attempts to show that the city itself is liable because it failed to properly train, discipline, monitor, or control Officers Solis and Spain, Motion No. 5 is granted. However, to the extent that Officers Solis or Spain testify at trial that they were acting in accordance with or relying upon their experience and training during the events at the center of this case, Brooks will be permitted to probe those areas on cross-examination.

### 4. Motion No. 6.

Defendants seek to prevent Brooks from offering testimony, evidence, or argument related to disciplinary records, complaints, and lawsuits involving Officers Solis and Spain (and any other CPD personnel). (R. 82, Defs.' Mot. No. 6 at 7.) Defendants argue that these other matters fall within the scope of improper

12

character evidence or propensity evidence. (Id.) Defendants further argue that such evidence should be barred because it is "irrelevant, hearsay, and any probative value it may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." (Id.) Although Brooks objects to the motion, he fails to develop any persuasive argument against it. (R. 98, Pl.'s Resp. at 3.)

Evidence of an officer's prior misconduct and discipline may be probative, but it may nonetheless be excluded if the probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Focusing more specifically on any alleged prior other acts by Officers Solis and Spain, evidence of a wrongful act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, courts have admitted other acts when admitted for the purpose of establishing a "pattern, intent, absence of mistake, etc. . . . [when the court] determined that the risk of unfair prejudice did not substantially outweigh the probative value of the evidence." *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990). In those exceptional cases where evidence of other acts is admitted, there must be a strong factual similarity between the prior acts and the misconduct alleged in the case at trial. *Bronzell v. Klein*, No. 91 CV 2952, 1992 WL 14180 (N.D. Ill. Jan. 17, 1992) (citing *Ismail*, 899 F.2d at 188-89).

13

Neither party has cited similar other acts involving Officers Solis and Spain. And even if evidence of other acts were raised, the court may admit such evidence under Federal Rule of Evidence 404(b) "only when its admission is supported by some propensity-free chain of reasoning." *Harris v. City of Chicago*, No. 14 CV 4391, 2017 WL 2462197, at *2 (N.D. Ill. June 7, 2017) (quoting *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014)). After such initial showing, "the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great." *Id.* (quoting *Gomez*, 763 at 860). Here, Brooks made no attempt to directly respond to Defendants' motion. He also has not established a "propensity-free chain of reasoning for why similar acts in the past would be relevant to a permitted purpose." *Id.* at *3. For these reasons, Defendants' Motion No. 6 is granted.

### 5.     Motion No. 12.

Defendants seek to bar Brooks from arguing that Defendants delayed the trial or that Brooks has waited a long time for his day in court. (R. 82, Mot. No. 12 at 12.) Defendants contend there is no evidence that they delayed this trial. (Id.) Brooks "conditionally objects . . . as long as Defendants do not make any arguments that [Brooks] delayed trial." (R. 98, Pl.'s Resp. at 4.) The court takes this to mean that Brooks is in agreement as long as Defendants do not argue the opposite that Brooks delayed the trial. This case could have moved forward more swiftly, but the

relevance of this topic to the jury is minimal at best and would more likely create unnecessary confusion. For these reasons, Defendants' Motion No. 12 is granted.

6. **Motion No. 17.**

Defendants seek to bar Brooks from presenting evidence of emotional damages related to how he and his son felt during the traffic stop when Brooks was taken into custody at Perry Avenue and 69th Street in Chicago, Illinois. Defendants argue that any emotional impact related to the arrest is irrelevant under Federal Rules of Evidence 401 and 403. Brooks notes that he "does not intend to elicit testimony outside of . . . [Brooks's] pre-trial detention." (R. 98, Pl.'s Resp. at 5.)

Defendants' Motion No. 17 is granted. "[T]he only remaining liability issues are whether Defendant Officers Solis and Spain handcuffed [Brooks] to a bench for eight hours after his arrest and whether this was objectively reasonable." (R. 73, Order dated March 29, 2917.)

7. **Motion No. 18.**

Defendants move to bar Lovie Ware, Janine Davis, and Letrecia Williams from testifying at trial regarding "[Brooks's] conditions of confinement" because they would have no personal knowledge and, therefore, any testimony about this subject would be based on hearsay. (R. 82, Defs.' Mot. No. 18 at 17 (citing Fed. R. Evid. 602, 801, 802).) Defendants also caution that Ware and Davis might attempt to provide expert witness testimony. (Id. (citing Fed. R. Evid. 701).) Brooks's opposition to this motion is not responsive. (R. 98, Pl.'s Resp. at 5.) Motion No. 18

15

is granted to the extent that Ware and Davis may not testify about the conditions of Brooks's detention and may not testify about any link between Brooks's detention and his emotional injuries unless they are qualified. (Brooks has advised the court in open court during today's pretrial conference that none of his witnesses will offer any testimony about the conditions of Brooks's confinement.) Also, as ruled during today's pretrial conference, Brooks may not call Williams as a trial witness unless she appears for her deposition within a reasonable period of time before jury selection.

**C.     Agreed Motions *in Limine***

The following agreed motions *in limine* are granted: (1) Brooks's Motion No. 2 to bar all reference to, or arguments based on, improper financial considerations, for example, reminding jurors that they are tax payers, that an award would not be taxable, or that Brooks would be entitled to fees; (2) Brooks's Motion No. 3 to bar evidence or argument of awards, commendations, and other improper bolstering as to Officers Solis and Spain; (3) Brooks's Motion No. 6 to bar argument that a finding of liability will mar Officers Solis's and Spain's exemplary or distinguished record; (4) Defendants' Motion No. 1 to bar Brooks from testifying or presenting argument regarding other lawsuits against the City of Chicago, Officers Solis and Spain, or any other Chicago police officer; (5) Defendants' Motion No. 3 to bar reference to other publicized events concerning allegations of police misconduct; (6) Defendants' Motion No. 7 to bar any testimony or evidence regarding indemnification by the City of Chicago; (7) Defendants' Motion No. 8 to

16

bar any reference to punishing or sending a message to the city; (8) Defendants' Motion No. 9 to bar any implication or testimony that Chicago Police Department personnel are being paid by the City to appear in court and testify and that they spent time with an attorney to prepare for trial; (9) Defendants' Motion No. 10 to bar any testimony or argument regarding settlement; (10) Defendants' Motion No. 11 to bar the attorneys and parties from conferring or speaking with any witnesses regarding the substance of their testimony while that witness is still under oath to provide sworn testimony; (11) Defendants' Motion No. 13 to bar any statement that would contradict Brooks's conviction; (12) Defendants' Motion No. 14 to bar any argument that the charge Brooks was convicted of should have led to an earlier release; (13) Defendants' Motion No. 15 to bar any testimony regarding the events that transpired during the traffic stop itself; and (14) Defendants' Motion No. 16 to bar any mention of emotional damages which are only related to the traffic stop itself.

## Conclusion

For the foregoing reasons, Brooks's Motion Nos. 1-4, 6-8, and 10 are granted, Brooks's Motion Nos. 5 and 9 are denied, Defendants' Motion Nos. 1-3 and 5-18 are granted, and Defendants' Motion No. 4 is denied.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**

17